# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# WESTERN DIVISION

**JEROME KENDRELL HARRIS # 203772**                                          **PLAINTIFF**

**VERSUS**                             **CIVIL ACTION NO. 5:18-cv-70-MTP**

**MAJOR T. DANIEL,** *et al.*                                                 **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Defendants' Motion [48] for Summary Judgment. Having carefully considered the parties' submissions and the applicable law, the Court finds that Defendant's Motion [48] for Summary Judgment should be granted in part and denied in part.

## FACTUAL BACKGROUND

Plaintiff, a post-conviction inmate in the custody of the Mississippi Department of Corrections ("MDOC"), filed this civil rights lawsuit on April 23, 2018. At the time of the underlying incident, Plaintiff was housed at Wilkinson County Correctional Facility ("WCCF"), a private prison run by Management & Training Corporation ("MTC"). An omnibus hearing was held in this matter on January 24, 2019, and Plaintiff clarified his claims.

According to Plaintiff, he was housed on the long-term segregation unit, and on this unit it is required that inmates be placed in restraints before going to the showers. On January 10, 2018, however, Defendant Chantel Woods allegedly escorted inmate Marcus Brafield, who was not restrained, out of the showers. Brafield allegedly took keys from Defendant Woods and told her and the other officers in the zone to leave. According to Plaintiff, the officers complied with Brafield's order and left the zone. Brafield used the keys to release three other inmates from their cells. Thereafter, the inmates opened Plaintiff's cell and attacked him.

According to Plaintiff, he was able to escape his cell, but the inmates pursued and continued their attack. Plaintiff alleges that Defendant Woods, along with Defendants Justin Green and Terry Daniel, watched the assault through a glass door but did not attempt to stop the inmates. Plaintiff was taken to University of Mississippi Medical Center following the attack. Plaintiff alleges that because of the attack, he lost his right eye and a tooth.

Plaintiff testified that he believes Defendant Woods knew Brafield planned to attack him and allowed the attack to occur. He believes this because Brafield was allowed to go to the showers unrestrained and because Defendant Woods knew Brafield and Plaintiff had prior arguments.

On February 19, 2019, the Court appointed counsel to represent Plaintiff. On April 8, 2019, Defendants filed a Motion [48] for Summary Judgment arguing that Plaintiff had not exhausted his administrative remedies prior to filing suit. Plaintiff responded on April 26, 2018 and Defendants replied on May 7, 2019.

**ANALYSIS**

"[S]ummary judgment is proper if the pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court must view the evidence in the light most favorable to the non-moving party. *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). If the moving party meets its burden, the "nonmovant must go beyond the pleadings and designate specific facts showing there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

Summary judgment is proper "where a party fails to establish the existence of an element essential to his case and on which he bears the burden of proof." *Washington v. Armstrong World Indus., Inc.*, 839 F.2d 1121, 1122 (5th Cir. 1988). In the absence of proof, the Court does not "assume that the nonmoving party could or would prove the necessary facts." *Little,* 37 F.3d at 1075 (emphasis omitted). "It is improper for the district court to 'resolve factual disputes by weighing conflicting evidence, … since it is the province of the jury to assess the probative value of the evidence.'" *McDonald v. Entergy Operations, Inc.*, 2005 WL 2474701, at *3 (S.D. Miss. Apr. 29, 2005) (quoting *Kennett-Murray Corp. v. Bone*, 622 F.2d 887, 892 (5th Cir. 1980)).

**Failure to Exhaust**

The thrust of Defendants' argument is that Plaintiff did not complete the administrative remedy process ("ARP") in place[1] at WCCF before filing a lawsuit relating to the alleged incident. Plaintiff disputes this argument and points to a grievance filed on January 27, 2018 where he stated that the medical staff was denying his eye drops, he wanted justice, and he sought access to the inmate legal assistance program and a § 1983 form. Mot. [48], Ex. B at 45-46. An ARP investigator responded to this grievance with a letter stating that each grievance should only contain one complaint or request and grievances containing multiple requests would be rejected. *Id.* Plaintiff argues that this grievance was enough to start the process and the letter he received in response on January 30, 2018 was not clear and the record does not show he ever received the letter.

The sufficiency of an administrative grievance is defined by each prison's own grievance process. *Jones v. Bock*, 549 U.S. 199, 218 (2007). Defendants submit that the grievance process

---

[1] Defendants submit that MDOC has a two-step grievance policy, and this policy was in place at the time of the alleged incident.

is found in the MDOC Inmate Handbook which states that the grievance should be brief but should also include all the facts necessary to understand the who, what, when, where, and how concerning the issue about which the prisoner is complaining.[2]

The grievance submitted by Plaintiff on January 27, 2018 does not explain that he thought prison guards and inmates worked in concert to injure him or that he wanted an investigation performed to understand what happened. In the disputed grievance, Plaintiff requested his eye drops, stated he was "seeking justice," and wanted access to a § 1983 form. Mot. [48], Ex. B at 45-46. Even if the process was confusing, as Plaintiff asserts, and this grievance should have been handled and responded to differently, Plaintiff did not request relief that relates to the subject of this lawsuit: namely that certain prison guards failed to protect him from harm and acted with deliberate indifference. The grievance filed on January 27, 2018 did not exhaust Plaintiff's available administrative remedies.

Plaintiff also filed a grievance on April 2, 2018 requesting an investigation of the assault he suffered on January 10, 2018. The ARP director, Richard Pennington, responded to Plaintiff that his grievance could not be processed because more than thirty days had elapsed between the date of the incident and the date he submitted his grievance. *See* Mot. [48], Ex. B at 58-61. "A prisoner cannot satisfy the exhaustion requirement 'by filing an untimely or otherwise procedurally defective administrative grievance or appeal' because 'proper exhaustion of administrative remedies is necessary.'" *Wilson v. Wilkinson Cty. Corr. Facility*, 2018 WL 1476113, at *2 (S.D. Miss. Feb. 28, 2018) (quoting *Woodford v. Ngo*, 548 U.S. 81, 83-84 (2006)). The Court, therefore, finds that Plaintiff did not exhaust his administrative remedies

---

[2] CHAPTER VIII ADMINISTRATIVE REMEDY PROGRAM, https://www.mdoc.ms.gov/Inmate-Info/Documents/CHAPTER_VIII.pdf (last visited May 17, 2019).

and the remaining question is whether he was required to exhaust those remedies before bringing this lawsuit.

Federal Claims

The Prison Litigation Reform Act ("PLRA") mandates that prisoners exhaust all administrative remedies available to them before filing suit. 42 U.S.C. § 1977e(a). Failure to exhaust is an affirmative defense and defendants must establish all the elements of the defense to succeed on summary judgment. *Evans v. Mgmt. & Training Corp.*, 2017 WL 78803, at *2 (S.D. Miss. Jan. 6, 2017). "District courts have no discretion to excuse a prisoner's failure to properly exhaust the prison grievance process before filing their complaint… and the case must be dismissed if available administrative remedies were not exhausted." *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012).

There is an exception, however, to the exhaustion requirement. "A prisoner need not exhaust remedies if they are not 'available.'" *Ross v. Blake*, 136 S. Ct. 1850, 1855 (2016). The United States Supreme Court has held that "an inmate is required to exhaust those, but only those grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Id*. at 1859 (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)). The Supreme Court further explained that there are three basics examples of when a prison grievance system is not capable of use to obtain relief: (1) when the procedure lacks authority to provide any relief, (2) when the procedure is so opaque and confusing that it becomes impossible to use, and (3) when prison administrators use misrepresentation or intimidation to prevent prisoners from using a grievance system. *Id*. at 1859-60. After *Ross*, the Fifth Circuit continues to take a "strict approach to exhaustion and requires inmates not to just substantially comply with the prison's grievance system but to exhaust available remedies properly." *Neely v. Hawkins*, 2019 WL

1773129, at *1 (5th Cir. Apr. 22, 2019) (internal quotations and citations omitted); *see also Wheater v. Shaw*, 719 Fed. App'x 367, 369 (5th Cir. 2018).

Plaintiff argues that he did not need to exhaust his administrative remedies because this lawsuit is seeking monetary damages, which are unavailable through the ARP in place at WCCF. Plaintiff relies on another case from this Court, *Evans v. Mgmt. & Training Corp.*, 2017 WL 78803 (S.D. Miss. Jan. 6, 2017), to argue that exhaustion was not required in this case because monetary damages are sought. In *Evans*, however, the Court held that the defendants "never identif[ied] *any* relief Evans could have received under the ARP" and that "it is conceivable that other relief remained available… [but] the Court will not speculate on arguments that have not been advanced." *Id*. at *3 (emphasis in original). The Court in *Evans* did not require exhaustion because the defendants failed to demonstrate a single form of relief that was available to the plaintiff through the ARP. *Id*.

Defendants in this case have identified relief that Plaintiff could have received under the ARP. An affidavit, submitted by Defendants, states that if a timely grievance had been filed the WCCF staff could have investigated the assault, informed Plaintiff of the findings, and taken any appropriate disciplinary action against the correctional officers involved. Resp. [59], Ex. A at 1-2. The exception to exhaustion considered in *Evans* is not applicable in this case because other forms of relief were available to Plaintiff, such as the investigation he requested in the grievance dated April 2, 2018. Plaintiff's interpretation of *Evans* would render the exhaustion requirements of the PLRA meaningless if every prisoner who failed to exhaust could then circumvent the process by requesting monetary damages in a federal lawsuit.

Because there was some form of relief available to Plaintiff through the ARP at WCCF, he was required to exhaust his administrative remedies. The record demonstrates that Plaintiff

did not exhaust the available administrative remedies and his claims brought under 42 U.S.C. § 1983 must be dismissed. *Ross*, 136 S. Ct. at 1857 (stating "mandatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion"). The Court, therefore, finds that Plaintiff's federal claims should be dismissed without prejudice.[3]

State-law Claims

Defendants also seek summary judgment to the extent Plaintiff has brought any claims under Mississippi state law. The State of Mississippi, like the federal government, requires prisoners to exhaust administrative remedy procedures before filing suit over state-law claims. *See* Miss. Code Ann. § 47-5-803. The parties, however, dispute, whether the Mississippi exhaustion statute applies to MTC as a private prison.

The statute reads:

> (1) Upon approval of the administrative review procedure by a federal court as authorized and required by the Civil Rights of Institutionalized Persons Act, and the implementation of the procedure within the department, this procedure shall constitute the administrative remedies available to offenders for the purpose of preserving any cause of action such offenders may claim to have against the State of Mississippi, the Department of Corrections or its officials or employees.
>
> (2) No state court shall entertain an offender's grievance or complaint which falls under the purview of the administrative review procedure unless and until such offender shall have exhausted the remedies as provided in such procedure. If at the time the petition is filed the administrative review process has not yet been completed, the court shall stay the proceedings for a period not to exceed ninety (90) days to allow for completion of the procedure and exhaustion of the remedies thereunder.

Defendants argue that § 47-5-803(2) demonstrates that this Court cannot hear Plaintiff's case because his complaint falls under the purview of the administrative review procedure in

---

[3] While Plaintiff's federal claims are dismissed without prejudice, the Court notes that this ruling may effectively serve as a dismissal with prejudice because Plaintiff may no longer be able to properly comply with the ARP at this late date.

place at WCCF. However, it appears from the statute that the exhaustion requirement applies to causes of action brought against the State, the Department of Corrections, or its officials and employees. Defendants do not explain how a private prison qualifies as an official or employee under § 47-5-803.

To support their position, Defendants rely on a Mississippi Court of Appeals decision *Leavitt v. Carter*, 178 So. 3d 334 (Miss. Ct. App. 2012). In *Leavitt*, three inmates received rule violation reports ("RVRs") while incarcerated at East Mississippi Correctional Facility, a private prison, for trading their food trays for canteen items. *Id*. at 336. Only one prisoner completed the ARP before filing suit. *Id*. at 337. The court of appeals held that the appeal of the other two prisoners had to be dismissed because they were appealing an administrative decision and they failed to exhaust their administrative remedies. *Id*.

The court of appeals did not consider Miss. Code Ann. § 47-5-803 or determine if private prisons qualified as employees or officials of the State for purposes of the statute. *Leavitt* relied solely on *McKenzie v. State*, 66 So. 3d 1274 (Miss. Ct. App. 2011) to hold that prisoners had to exhaust their administrative remedies before filing suit. *McKenzie,* however, dealt with a prisoner suing the State in State court over what he perceived as an error in the computation of his sentence. Neither *Leavitt* or *McKenzie* explain how § 47-5-803 should apply to private prisons or to the defendants in this matter.

The Mississippi Supreme Court has not addressed this issue, and holdings from intermediate state courts, while instructive, are not binding. *West v. Am. Tel. & Tel. Co*., 311 U.S. 223, 237 (1940). The Court does not find *Leavitt* to be persuasive for the position that § 47-5-803 applies to private prisons.

While the issue is not settled,[4] this Court has previously held that "only those claims against actual official or employees of the Department of Corrections need be exhausted before they are allowed to proceed." *Pickens v. Mgt. & Training Corp.*, 2017 WL 5559847, at *3 (S.D. Miss. Nov. 17, 2017). The Court in *Pickens* reached this conclusion after considering the plain meaning of the statute. After examining the meaning of the words "employee" and "official" as they were defined at the time the statute was passed, the Court held that "official and employee did not apply to independent contractors at the time the legislature wrote those words in the [statute]." *Id*. at 4.[5]

Moreover, it is "unlikely that the legislature considered whether those terms applied to private prisons when it passed section 47-5-803 in 1989, because Mississippi first authorized private prisons in 1992." *Evans*, 2017 WL 78803, at *3 (citing 1989 Miss. Laws Ch. 563, § 2; 1992 Miss. Laws Ch. 537, § 1). The Court agrees that the plain language of the statute does not include private prisons, and Defendants have not provided any authority showing that private prisons qualify as employees or officials of the State.

Once private prisons were adopted in Mississippi, the legislature explicitly exempted private prisons from the sovereign immunity protections the State enjoys. *See* Miss. Code Ann. § 47-5-1219(b). Yet, the legislature did not amend § 47-5-803 to include private prisons. The legislature's actions, combined with a plain reading of the statute, leads this Court to conclude that § 47-5-803 does not apply to private prisons. Plaintiff was, therefore, not required to

---

[4] See *Bell v. Mgt. & Training Corp.*, 2017 WL 6060885 (S.D. Miss. Dec. 7, 2017); *Evans v. Mgt. & Training Corp.*, 2017 WL 78803 (S.D. Miss. Jan. 6, 2017).

[5] This approach has also been adopted by the Maryland Supreme Court. *See Adamson v. Corr. Med. Services, Inc.*, 359 Md. 238 (2000).

exhaust his state-law claims against Defendants. Summary judgment is not appropriate as to Plaintiff's state-law claims.

IT IS, THEREFORE, ORDERED that Defendants' Motion [48] for Summary Judgment is GRANTED IN PART as to Plaintiff's federal claims and DENIED IN PART as to Plaintiff's state-law claims.

SO ORDERED, this the 10th day of June, 2019.

s/Michael T. Parker<br>United States Magistrate Judge